HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PROGRESSIVE CLASSIC INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL ZUPAN, PERSONAL REPRESENTATIVE OF THE ESTATE OF JOHN JAMES ZUPAN, <br><br> Defendant. | CASE NO. C12-5178-RBL <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT <br><br> (Dkt. #s 12, 14) |

This matter involves an Underinsured Motorist coverage dispute arising out of a fatal motorcycle accident. John Zupan[1] was hit and killed while riding a newly-acquired motorcycle that was not listed on his Progressive Classic Insurance policy. Progressive moves for summary judgment, arguing that it is not obligated to provide UIM coverage under Zupan's policy (Dkt. #12). Zupan opposes the motion, and cross-moves for summary judgment declaring that Progressive's policy did provide coverage for the motorcycle at issue (Dkt. #14). Progressive's Motion is DENIED, and Zupan's Cross-Motion is GRANTED.

---

[1] Zupan's Estate is the party seeking coverage in this case. It will be referred to as "Zupan" throughout this Order.

## I. FACTS

John Zupan was a motorcycle enthusiast. He owned a large number of motorcycles that he stored in a warehouse in Vancouver, Washington. Several of Zupan's motorcycles were classic and show motorcycles.

All but one of Zupan's motorcycles was insured under his Progressive Motorcycle policy. The other motorcycle, which is otherwise not at issue here, was insured by a different insurance company. Zupan's Progressive policy provides coverage for a newly-acquired motorcycle if Progressive insures all of Zupan's motorcycles, or if the newly-acquired motorcycle is a replacement motorcycle. The policy defines "replacement motorcycle" as a motorcycle that "permanently replaces" a motorcycle listed on the policy's declarations page. Progressive Policy at 2, Foley Decl., Ex. 1, Dkt. #13.

During the summer of 2011, Zupan began looking for another motorcycle to buy. Zupan told his son, Michael Zupan, on several occasions that he was going to get rid of his 1998 Honda motorcycle. The Honda was listed on the Progressive policy's declarations page. Zupan asked his son if he would be interested in buying the Honda, but Michael was not interested.

Zupan also talked to his friend and fellow motorcycle enthusiast, Jim Estes, about selling the Honda. The two discussed what the Honda was worth and how much money Zupan could get for it. Zupan expressed an interest in selling the Honda to Estes. Estes, however, thought Zupan was joking about selling the motorcycle to him because Estes "needed another bike like [he] needed a hole in [his] head." Estes Dep. at 29, Wise Decl., Ex. B, Dkt. #15.

In early August 2011, Zupan bought a 2009 BMW motorcycle on eBay. Zupan received the BMW on August 30, 2011. He was riding it for the first time that day when he was hit and

killed by another driver. At the time of his death, Zupan had not taken out any insurance on the BMW.

Following Zupan's death, Zupan's Estate sought UIM coverage under Zupan's Progressive policy. Progressive denied coverage, claiming that Zupan's BMW was not insured under his policy. Progressive now moves for summary judgment, arguing that it is not obligated to provide coverage under Zupan's policy because the BMW was not a replacement motorcycle. Zupan opposes the motion, and cross-moves for summary judgment declaring that his Progressive policy covered the BMW.

## II.   DISCUSSION

**1. Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1221.

**2. Insurance Policy Interpretation Under Washington Law.**

The Court's task in interpreting an insurance contract is well-settled: it looks to the whole contract, giving it a fair, reasonable, and sensible construction. *Holden v. Farmers Ins. Co.*, 169 Wn. 2d 750, 755-56 (2010). Washington law provides that an "[i]nsurance contract should be given a practical and reasonable, rather than a literal, interpretation, and should not be given a construction which would lead to an absurd conclusion or render the policy nonsensical or ineffective." *Wash. Pub. Util. Dists.' Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam Cnty.*, 112 Wn. 2d 1, 11 (1989). Put another way, a court "may not give an insurance contract a strained or forced construction which would lead to an extension or restriction of the policy beyond what is fairly within its terms." *McAllister v. Agora Syndicate, Inc.*, 103 Wn. App. 106, 109 (2000) (quoting *Tewell, Thorpe, & Findlay, Inc. v. Cont'l Cas. Co.*, 64 Wn. App. 571, 576 (1992)). The rule that ambiguous contract language is to be construed in favor of the insured and most strongly against the insurer should not be permitted to have the effect of making a plain agreement ambiguous. *McAllister*, 103 Wn. App. at 110 (citing *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 80 Wn. 2d 38, 44 (1971)).

**3. Zupan's BMW Motorcycle Was a Replacement Motorcycle.**

Zupan's Progressive policy provides coverage for a newly-acquired motorcycle (1) if Progressive insures all other motorcycles owned by Zupan, or (2) if the newly-acquired motorcycle is a replacement motorcycle.[2]

It is undisputed that Progressive did not insure all of Zupan's motorcycles. Thus, the only issue is whether Zupan's BMW was a replacement motorcycle under his Progressive policy. The

---

[2] "'Additional motorcycle' means a motorcycle you become the owner of during the policy period that does not permanently replace a motorcycle shown on the declarations page . . . if we insure all other motorcycles you own . . . 'Covered motorcycle' means . . . any replacement motorcycle." Progressive Policy at 1, Foley Decl., Ex. 1, Dkt. #13.

policy defines "replacement motorcycle" as a motorcycle that "permanently replaces" a motorcycle listed on the policy's declarations page. Progressive Policy at 2, Foley Decl., Ex. 1, Dkt. #13.

Progressive argues that Zupan's BMW was not a replacement motorcycle because Zupan did not permanently replace the Honda with the BMW. Pl.'s Mot., Dkt. #12 at 3. Zupan argues that the BMW was a replacement motorcycle, because Zupan *intended* to replace his Honda with the BMW. Def.'s Resp., Dkt. #14 at 3.

In Washington, "the concept of replacement has been construed as a matter of intent rather than an actual replacement as to ownership." *Rowland v. State Farm Mut. Auto. Ins. Co.*, 9 Wn. App. 460, 465 (1973) (quoting 12 Couch on Insurance § 45:210 (2d ed. 1964)). Thus, the ultimate question in this case is not whether Zupan did in fact replace the Honda with the BMW, but whether Zupan intended to replace the Honda with the BMW. *Id.* at 464.

The only evidence before the Court is that Zupan intended to replace the Honda with the BMW. He talked about selling the Honda multiple times with his son and friend, and even tried to sell the Honda to both of them. Zupan specifically told Estes that he was "replacing [the Honda] with a bike that was safer, had much better performance, [and] was easier to use on a trip." Estes Dep. at 36, Wise Decl., Ex. B, Dkt. #15. Zupan also mentioned that he was going to get rid of the Honda once he acquired a replacement because he "wanted a sports touring bike that had later technology than the [Honda] did." *Id.* at 29. Although Zupan still owned the Honda at the time of his death, the evidence is clear that Zupan intended to replace the Honda with the BMW. Zupan's BMW was therefore a replacement motorcycle under his Progressive policy, as a matter of law.

### III.     CONCLUSION

Even viewed in the light most favorable to Progressive, the evidence establishes that Zupan intended to permanently replace the Honda with the BMW.  As a matter of law, Zupan's BMW was a replacement motorcycle under his Progressive policy.  Progressive is therefore obligated to provide coverage for the UIM claim under Zupan's policy.  Progressive's Motion for Summary Judgment (Dkt. #12) is DENIED, and Zupan's Cross-Motion for Summary Judgment is GRANTED (Dkt. #14).  IT IS SO ORDERED.

Dated this 24th day of May, 2013.

*Ronald B. Leighton* (signature)

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE